IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN D. DOWNEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06-cv-187-GPM |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for Review of the Commissioner's Decision Denying Benefits filed by Steven D. Downen ("Plaintiff") on March 2, 2006 (Doc. 1). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the Commissioner, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

#### PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on August 8, 2003 (Tr. 14), alleging an onset date of August 1, 2003 (Tr. 15). His claim was denied initially and on reconsideration (Tr. 14). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 27, 2005 (Tr. 14). After the hearing, the ALJ issued an unfavorable decision on July 18, 2005 (Tr.14-22). On January 3, 2006, the ALJ's decision became the Commissioner's final decision when the Appeals Council

1

denied Plaintiff's request for review (Tr. 5-8).

Plaintiff filed this suit in the U.S. District Court for the Southern District of Illinois on March 2, 2006 (Doc. 1). Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to consider a diagnosis of lumbar degenerative disc disease in assessing Plaintiff's RFC and determining that he could perform light work.

## SUBSTANTIVE HISTORY

**Medical History**

At the time of the hearing, Plaintiff was 54 years old with a high school education (Tr. 14). His past relevant work consisted of carpentry and welding/pipefitting (Tr. 14-15).

In February 1998, Plaintiff fell 14 feet while at work, injuring his neck, back, and pelvis, and requiring hospitalization (Tr.124-43). Cervical spine x-rays were generally normal except for mild disc narrowing at C5-6 (Tr. 124-30). Lumbar spine x-rays showed moderate narrowing of the L5-S1 disc space with mild narrowing of the L4-5 disc space (Tr. 124-30). Pelvis x-rays and a CT scan showed a slight mal-alignment of the pubic bone and a sacral fracture (Tr. 125, 131-32). Lower extremity x-rays were normal (Tr. 126).

Plaintiff was discharged from the hospital a week later with diagnoses of a upper sacrum and pubis fracture and low back pain with left leg numbness (Tr. 131, 146-94). At discharge, he was placed in a three-week hospital therapy program (Tr. 131, 146-94). Following three weeks of physical therapy, physicians described Plaintiff as much improved (Tr.148, 189). X-rays showed unchanged pubis displacement, but the sacral fracture appeared to be healing in excellent position and alignment (Tr. 148, 189). Plaintiff was given pain medications and instructed to follow up with his physician (Tr. 148). He participated in outpatient physical therapy for 9 months, started working again in August 1998, and was given a full work release in November

1998 (Tr. 207-57).

In October 1998, Plaintiff told physicians that he was working 6 days a week and feeling great (Tr. 209). In November 1998, he said that he had numbness and tingling in his thighs while wearing his heavy tool belt, but decided that the easiest solution would be for him to occasionally take off the belt during the day (Tr. 208).

On September 23, 2003, Plaintiff underwent a physical consultation examination with Dr. Raymond Leung at the state agency's request (Tr. 109-13). Plaintiff reported fracturing his sacrum after falling on his back in 1998 (Tr. 109). He reported a constant pain and described having difficulty with bending, squatting, and prolonged sitting and standing (Tr. 109). He did not take pain medications, but told Dr. Leung that epidural injections and chiropractor treatments had helped his symptoms (Tr. 109). On examination, Plaintiff was in no apparent distress (Tr. 110). He had a minimal limp, but was able to walk 50 feet unassisted, heel walk, toe walk, and squat (Tr. 111). He had sacral spine tenderness and had mildly limited forward flexion (Tr. 111). He could get on and off of the examination table, had positive straight leg raising, and mildly diminished strength (Tr. 111). Plaintiff's reflexes were within normal limits and his extremities showed no signs of cyanosis, clubbing, or edema (Tr. 111). Dr. Leung's impression was history of sacral fracture (Tr. 111).

In a report dated September 26, 2003, Dr. James C. Corzine, a chiropractor, outlined the treatment Plaintiff received for his back between November 2001 and September 2003 (Tr. 114-19). Dr. Corzine then listed his clinical findings, concluding that Plaintiff had a combined permanent impairment of 22 per cent as defined by the American Medical Association Guidelines (Tr. 119).

In October 2003, Dr. B. Rock Oh reviewed the medical evidence at the state agency's

request (Tr. 101-08). Dr. Oh considered Plaintiff's allegations of back problems, noting that Plaintiff had a mildly tender lower lumbar and sacral spine, 80 degree flexion motion, mildly diminished leg strength, and a limping gait, but no other significant musculoskeletal or neurological findings (Tr.108). Dr. Oh concluded that Plaintiff retained the ability to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; and stand, walk, or sit about 6 hours in an 8-hour work day with unlimited push and/or pull (light exertional work as defined by the regulations, 20 C.F.R. § 404.1567(b)) (Tr. 102). Dr. Oh further restricted Plaintiff to no climbing of ladders, ropes, or scaffolds, and occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 103). A second reviewing physician also reviewed the medical evidence and agreed with Dr. Oh's opinion (Tr. 108).

During March and April of 2005, Plaintiff went to a clinic three times with complaints of back pain (Tr. 121-23). A clinic physician ordered a lumbar MRI, which revealed disc protrusions at the lower four lumbar disc spaces with narrowing of the spinal canal at those spaces (Tr. 120). Upon review of the MRI results, Dr. Tahira Yasmeen diagnosed spinal stenosis, degenerative disc disease, and disc problems (Tr. 121).

**Hearing Testimony**

Plaintiff and a vocational expert, Dr. James E. Bordieri, testified at the hearing. In response to questions posed by the ALJ, Plaintiff testified that he was 54 years old with a high school education, was not married, held a valid driver's license, and drove himself to the hearing (Tr. 280). He testified further that he attended welding school after completing high school (Tr. 281). He testified that the last time he worked for wages was August 2003 (Tr. 281). Plaintiff explained that he stopped working because of problems in his back stemming from an on-the-job injury (Tr. 281). He testified further that he did not file a workmen's compensation claim

subsequent to his August 2003 injury (Tr. 284). Plaintiff then testified that he subsisted on 401(k) retirement funds (Tr. 285).

Plaintiff testified that he fractured his lower back in February 1998 (Tr. 285). He clarified that he was not alleging disability via that injury, but instead via compacted disks in his spine (Tr. 285). He testified that he had not had any back surgeries and was not scheduled to undergo any surgeries (Tr. 285). He testified that he had not seen a neurosurgeon (Tr. 286). He testified further that his lower back pain extended to his right leg (Tr. 286). He testified that he took Flexeril and Ibuprofen for pain (Tr. 286).

Plaintiff testified that he worked as a carpenter from 1992 until the time he stopped working in 2003 (Tr. 287). He testified that, prior to that, he worked as a welder, a pipefitter, and as a worker in mine construction (Tr. 288). He testified that his work in mine construction entailed frequently carrying a 25-pound bucket and helping coworkers position 600-pound pipes (Tr. 289).

Plaintiff testified that his chiropractor was Dr. Corzine and his medical doctor was Dr. Yasmeen (Tr. 290). He testified that he was in pain during the hearing and that it rated 7 or 8 on a scale of 1 to 10 with 10 being the worst (Tr. 290). He testified that he could walk a half block, stand 20 minutes, lift 10 pounds, sit 25 minutes, and dress himself (Tr. 291). He also testified that he could not bend, stoop, or squat very well (Tr. 291). He testified that he could make a fist with both hands and use both hands to eat (Tr. 291). He testified that he had no breathing problems and that he smoked a pack of cigarettes per day (Tr. 292). He testified that he was able to take care of his personal needs, including bathing, shaving, and cooking (Tr. 293). He also testified that he spent most of his days watching television (Tr. 293). He testified that he liked fishing, but was limited to fishing in places where he can lower the line into the water from his

car window (Tr. 293).  He testified that he could no longer hunt, but that he could probably do some camping (Tr. 293).  He testified further that he did his own housework and carried small grocery bags (Tr. 294).

In response to questions posed by his attorney, Plaintiff testified that he had to lift 30-pound sheeting while working as a carpenter (Tr. 295).  He testified that he and three other people lifted 300-pound windows on that job (Tr. 296).  He testified further that he was injured when he fell from the roof of a house onto a concrete floor 12 feet below (Tr. 296).  He testified that he returned to work after that despite continued pain in his lower back (Tr. 297).  He testified further that the pain worsened since the day he was injured (Tr. 297).  He next testified that he had lifted 100 pounds in his job as a pipefitter (Tr. 298).

Plaintiff next testified that Dr. Yasmeen had recommended he see a neurosurgeon, but he had not done so because it was too costly (Tr. 298).  He testified that his back pain level was 7 to 8 and that he experienced that level of pain on at least 5 days of the week (Tr. 298).  He testified that his pain intensified if he did not take medication and if he tried to lift something (Tr. 299).  He testified further that he could walk a block before having to stop because of pain (Tr. 301).

In response to questions posed by the ALJ, the vocational expert testified that Plaintiff's past work as a carpenter was medium to heavy, skilled employment (Tr. 303).  He testified that some of the skills Plaintiff used as a welder/pipefitter were transferable to 1,600 similar jobs in the regional economy at the light, skilled level (Tr. 303).  He testified further that none of those skills would be transferable to sedentary jobs (Tr. 304).  He testified that a person of Plaintiff's age and skill level, who could never climb ladders, ropes or scaffold, who could only occasionally balance, stoop, kneel, crouch, or crawl, and who could lift 20 pounds occasionally and 10 pounds frequently, would not be able to perform any of Plaintiff's past relevant work (Tr.

6

305).  He testified that a person with Plaintiff's limitations could perform light, skilled work and that those jobs existed in the regional economy (Tr. 305).

**The ALJ's Findings and Conclusions**

Pursuant to Step 1 of the five-step sequential evaluation, the ALJ found that claimant was not engaged in substantial gainful activity (Tr. 20).  In Step 2, the ALJ found that Plaintiff had two severe disabilities, namely lumbar spine degenerative disc disease and a history of a comminuted sacral fracture (Tr. 21).  In Step 3, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment in Appendix I (Tr. 21).  The ALJ found in Step 4 that Plaintiff's impairment prevented him from performing his past relevant work (Tr. 24).  In the fifth and final step, the ALJ found that Plaintiff could perform a significant range of light work and that a significant number of jobs existed in the economy (Tr. 21).  Pursuant to the foregoing evaluation, the ALJ found that Plaintiff was not under a disability and was thus ineligible for SSI or DIB.

## CONCLUSIONS OF LAW

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act ("Act") is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive[.]"); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility").  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972) (quoting

Consolidated Edison Company v. NLRB, 305 U.S. 197, 101 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. See Golembiewski, 322 F.3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000). This deferential standard applies to credibility findings as well as RFC findings. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) ("The ALJ's credibility determinations generally will not be overturned unless they were patently wrong."). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003); Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004) (stating that "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws").

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. § 416.920. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 416.920(c). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits ... physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Third, the ALJ determines whether

that severe impairment meets any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 ("Appendix 1"). 20 C.F.R. § 401, pt. 404, subpt. P, app. 1. If it does, then the Commissioner acknowledges that the impairment is conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. § 416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage in past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he completely disregarded medical evidence that Plaintiff suffered from symptoms of lumbar degenerative disc disease as indicated by an April 2005 MRI. However, a careful reading of the ALJ's opinion contradicts Plaintiff's contention. The ALJ asked Plaintiff about these symptoms in the hearing (Tr. 286), submitted the April 2005 MRI to the vocational expert (Tr. 278, 302), and specifically addressed the symptoms in his written opinion (Tr. 16), finding on the basis of the April 2005 MRI that Plaintiff suffered from the severe impairment of degenerative disc disease (Tr. 21). After taking into consideration this medically determinable impairment along with Plaintiff's testimony and the vocational expert's testimony, the ALJ assessed an RFC, finding that Plaintiff could perform light, skilled work as identified by the vocational expert (Tr. 21). Plaintiff's contentions notwithstanding, the ALJ considered this evidence in his performance of Step 2 (finding a severe impairment of lumbar degenerative disc disease), Step 3 (finding that the impairment did not meet the Appendix 1 listings), Step 4 (finding that the

9

impairment precluded Plaintiff's past relevant work), and Step 5 (finding that the impairment limited Plaintiff to light, unskilled work, which existed substantially in the economy) (Tr. 21).  It seems that Plaintiff overlooked this portion of the ALJ's written decision as well as the corresponding portion of the hearing transcript.  Nonetheless, Plaintiff's contention that the ALJ ignored the evidence establishing degenerative disc disease is not colorable under a fair reading of the record now before the Court.  Because Plaintiff's argument finds no support in the record, and because he raises no other argument in support of his petition for review, the Court may, without further analysis, deny Plaintiff's petition and enter a judgment for the Commissioner.

Because Plaintiff has failed to demonstrate that the ALJ's decision was not supported by substantial evidence or that he committed an error of law, it is **RECOMMENDED** that Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the Commissioner, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 16, 2007**

                                             s/ *Donald G. Wilkerson*
                                             **DONALD G. WILKERSON**
                                             **United States Magistrate Judge**